IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CONSTITUTION PARTY OF, | : | |
| PENNSYLVANIA, et al. | : | |
| Plaintiffs | : | Civil Case |
| | : | |
| v. | : | |
| | : | |
| PEDRO A. CORTES, et al. | : | No. 5:09-cv-01691 |
| Defendants | : | |

## MEMORANDUM

**Stengel, J.**                                                    **March 31, 2010**

This involves six plaintiffs in search of a case. The Constitution Party of

Pennsylvania, The Green Party of Pennsylvania, and the Libertarian Party of

Pennsylvania, and the chairs of the three parties, challenge the constitutionality of certain

sections of the Pennsylvania Election Code. They believe the sections place unreasonable

burdens on non-major party candidates.[1] The defendants[2] filed motions to dismiss the

amended complaint.[3]

---

[1] Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief, Constitution
Party of Pennsylvania v. Cortes, No. 09-1691 (E.D. Pa. filed June 19, 2009) [hereinafter
Amended Complaint].

[2] The Justices of the Supreme Court of Pennsylvania, the Judges of the Commonwealth
Court of Pennsylvania, Charlese W. Johns, Prothonotary of the Supreme Court of Pennsylvania,
and Michael F. Krimmel, Chief Clerk of the Commonwealth Court of Pennsylvania will be
referred to collectively as "Judicial Defendants." Pedro Cortes, Chet Harhut, and Thomas
Corbett will be referred to collectively as "Executive Defendants."

[3] See Motion to Dismiss Plaintiffs' Amended Complaint Filed on Behalf of the Justices
of the Supreme Court of Pennsylvania, the Judges of the Commonwealth Court of Pennsylvania,
Charles W. Johns, Prothonotary of the Supreme Court of Pennsylvania, and Michael F. Krimmel,
Chief Clerk of the Commonwealth Court of Pennsylvania, Constitution Party of Pennsylvania v.
Cortes, No. 09-1691 (E.D. Pa. filed July 2, 2009); Defendants Pedro A. Cortes, Chet Harhut, and

Because the plaintiffs present no case or controversy as required by Article III of the Constitution, I will dismiss their amended complaint.

## I.    **Background**

Plaintiffs allege the Pennsylvania Election Code imposes unavoidable and severe burdens on candidates for public office unless they are members of the Republican or Democratic party.  According to the plaintiffs, this "freezes" the political status quo.

The Election Code allows major party candidates to access the general election ballot through publicly funded primary elections.  25 Pa. C.S.A. § 2862.[4]  Non-major party candidates,[5] however, must submit nomination papers.  25 Pa. C.S.A. § 2872.2.[6]

---

Thomas Corbett's Motion to Dismiss the Amended Complaint, <u>Constitution Party of Pennsylvania v. Cortes</u>, No. 09-1691 (E.D. Pa. filed Aug. 24, 2009).

[4]  28 Pa. C.S.A. § 2862 provides: "All candidates of political parties, as defined in section 801 of this act . . . shall be nominated, and party delegates and alternate delegates, committeemen and officers who, under the provisions of Article VIII of this act or under the party rules, are required to be elected by the party electors, shall be elected at primaries held in accordance with the provisions of this act, except as otherwise provided in this act."

[5]  Pursuant to 25 Pa. C.S.A. § 2831(a), a political party is "[a]ny party or political body, one of whose candidates at the general election next preceding the primary polled in each of at least ten counties of the State not less than two per centum of the largest entire vote cast in each of said counties for any elected candidate, and polled a total vote in the State equal to at least two per centum of the largest entire vote cast in the State for any elected candidate, is hereby declared to be a political party within the State . . . ."

"Any political body which is not a political party, as hereinabove defined, but which has nominated candidates for such general or municipal election by nomination papers in the manner provided by this act, shall be deemed to be a political body within the meaning of this act."  25 Pa. C.S.A. § 2831(c).

Private parties are allowed to challenge the validity of these nomination papers. 25 Pa.

C.S.A. § 2937.[7] A court is authorized to tax litigation costs and attorney fees "it shall

deem just" against the candidate defending the challenged nomination paper.[8] See 25 Pa.

C.S.A. § 2937; In re: Nomination Paper of Ralph Nader, 905 A.2d 450, 458 (Pa. 2006)

(the Supreme Court of Pennsylvania found a court could impose costs and attorney fees

---

In addition, a minor party is defined as a political party "whose State-wide registration is less than fifteen per centum of the combined State-wide registration for all State-wide political parties as of the close of registration period immediately preceding the most recent November election." 25 Pa. Cons. Stat. § 2872.2.

This opinion will refer to minor party candidates, political body candidates, and independent candidates collectively as "non-major party candidates."

[6] 25 Pa. C.S.A. § 2872.2(a) provides: "(a) Notwithstanding any other provision in this act to the contrary, minor political parties shall nominate all of their candidates for the offices to be filled at the ensuing November election pursuant to section 903 in accordance with the requirements of section 951, other than subsection (e)(6) and (7) thereof, and section 954, and shall obtain the required signatures during the same time frame available to political bodies. Minor political parties shall be subject to the provisions of this act applicable to political parties with respect to special elections, voter registration forms, substituted nominations and all other purposes except as otherwise expressly provided in this section . . . ."

[7] 25 Pa. C.S.A. § 2937 provides: "All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. . . . If the court shall find that said nomination petition or paper is defective under the provisions of section 976, or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, it shall be set aside. . . . In case any such petition is dismissed, the court shall make such order as to the payment of the costs of the proceedings, including witness fees, as it shall deem just. . . ."

[8] If the private parties lose, the candidate can receive costs from the challenger. In re Farnese, 948 A.2d 215 (Pa. Commw. Ct. 2008) (assessing costs against private individuals who unsuccessfully challenge a candidate's petition).

against a candidate).

At the crux of the plaintiffs' concern is a 2004 Pennsylvania Commonwealth Court case in which litigation costs of more than $80,000 were taxed against two independent candidates, Ralph Nader for President and Peter Miguel for Vice President of the United States.  See Nader, 905 A.2d at 455, 459.  Apparently, this was the first time the court authorized the taxation of costs against the defending candidates, rather than against individuals challenging the nomination papers.  Then, in 2006, the Commonwealth Court taxed more than $80,000 in litigation costs and attorneys fees against a non-major party candidate for United States Senate, Carl Romanelli.  In re Nomination Paper of Rogers, 942 A.2d 915, 933 (Pa. Commw. Ct. 2008).  The Supreme Court of Pennsylvania affirmed both taxations.  See Nader, 905 A.2d at 459; In re Rogers, 934 A.2d 696, 696 (Pa. 2007).[9]

Plaintiffs allege other non-major party candidates, specifically Hagan Smith, Marakay Rogers, and Ken V. Krawchuk, either refused to submit or withdrew their nomination papers because of the threat they would be taxed with costs and fees.  They ran as write-in candidates.  Plaintiffs contend the candidates' chances for success were

---

[9] On July 10, 2008, Pa. Attorney General Thomas Corbett charged employees of the Pennsylvania House Democratic Caucus with criminal conspiracy, theft, and conflict of interest, including allegations the challenges to the 2004 and 2006 non-major  party candidate nominations were prepared by these employees using funds and resources misappropriated from the taxpayers.  Amended Complaint at ¶ 39.  Following these allegations, the Commonwealth Court refused to set aside the prior taxation of costs.  Id.  On August 17, 2009, the Pennsylvania Supreme Court affirmed the decision relating to Nader.  Romelli's appeal is still pending.

impaired when, in 2006, officials in nine Pennsylvania counties did not compute and certify the write-in votes and, in 2008, officials in seven counties did not compute and certify write-in votes.

In affirming the assessment of costs in <u>Nader</u>, the Pennsylvania Supreme Court found the provision allowing the assessment of costs did "not impinge upon any constitutional rights in a way that would warrant constitutional scrutiny."[10] <u>Nader</u>, 905 A.2d at 459. The <u>Nader</u> court stated, "[e]ven if the statute did burden ballot access, which it did not, the burden would be reasonable and rationally related to the interest of the Commonwealth in ensuring honest and fair elections." <u>Id.</u> Both the <u>Nader</u> and <u>Rogers</u> courts noted "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." <u>Rogers</u>, 942 A.2d at 929 (quoting <u>Nader</u>, 905 A.2d at 460); <u>Nader</u>, 905 A.2d at 459 (quoting <u>Burdick v. Takushi</u>, 504 U.S. 428, 440 n.10 (1992)).[11]

---

[10] The court noted the candidate "provided no evidence to show how the assessment of costs, following a finding by the Commonwealth Court that nearly two-thirds of the signatures on the nomination papers were invalid, penalized their exercise of free speech." <u>Nader</u>, 905 A.2d at 459. The Commonwealth Court of Pennsylvania noted some outrageous examples of signatures, including "'Mickey Mouse', 'Fred Flintstone,' 'John Kerry,' and the ubiquitous 'Ralph Nader.'" <u>Id.</u> at 458 (citing Commonwealth Court, Oct. 13, 2004, Consolidated Findings, Opinion, and Order at 14). In addition, the petitions contained "thousands of names that were created at random and then randomly assigned to either existent or non-existent addresses by the circulators." <u>Id.</u>

[11] Plaintiffs claim they are not challenging the state court decisions in <u>Nader</u>, 905 A.2d 450, 455 (Pa. 2006) and <u>Rogers</u>, 942 A.2d 915, 933 (Pa. Super. Ct. 2008), nor could they in a federal district court. <u>See</u> <u>Guarino v. Larsen</u>, 11 F.3d 1151, 1156-57 (3d Cir. 1993) (federal

Plaintiffs' claim the <u>Nader</u> and <u>Rogers</u> decisions "chilled" the rights of future candidates who might attempt to gain access to the ballot. To them, the assessed costs are unconstitutional because they impose a monetary barrier to ballot access and because the statute does not provide notice of when costs will be assessed. This, they contend, is in violation of the Due Process clause.[12]

The three counts of the complaint attempt to state bases for constitutional challenges and to prescribe methods of relief. Count I of Plaintiffs' amended complaint alleges § 2872.2 "independently and in conjunction with other provisions of the Pennsylvania Election Code, [is] unconstitutional as applied to Plaintiffs, because it impermissibly burdens and chills Plaintiffs exercise of freedoms guaranteed to them by the First Amendment, Fourteenth Amendment, Qualifications Clauses and elsewhere in the United States Constitution, and because it subjects them to such burdens without notice or limitation, in violation of their right to due process of law guaranteed by the Fourteenth Amendment."   Count II alleges § 2937 "independently and in conjunction with other provisions of the Pennsylvania Election Code, [is] unconstitutional as applied to Plaintiffs, because it impermissibly burdens and chills Plaintiffs exercise of freedoms

_____

courts should presume completed state court proceedings correctly resolved federal issues presented); <u>see also</u> <u>Dist. of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 476 (1983) (federal district court is without authority to review final determinations of state courts).

[12] <u>See</u> Plaintiffs' Response in Opposition to the Motion to Dismiss the Amended Complaint Filed by Defendant Justices, Defendant Judges and Defendant Johns and Krimmel at 3-5, <u>Constitution Party of Pa. v. Cortes</u>, No. 09-1691 (E.D. Pa. filed July 20, 2009).

guaranteed to them by the First Amendment, Fourteenth Amendment, Qualifications

Clauses and elsewhere in the United States Constitution, and because it subjects them to

such burdens without notice or limitation, in violation of their right to due process of law

guaranteed by the Fourteenth Amendment." Amended Complaint at ¶ 50. Count III of

Plaintiffs' amended complaint requests an injunction providing the Executive Defendants

"take any and all measures necessary to ensure that votes validly cast pursuant to Section

2936(a) are accurately and completely computed and certified for each candidate, as

required by Section 3155." Amended Complaint at ¶ 64.


## II.     Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46

(1957). The factual allegations must be sufficient to make the claim for relief more than

just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To

determine whether to grant a motion to dismiss, a federal court must construe the

complaint liberally, accept all factual allegations in the complaint as true, and draw all

reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks County

Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

**III.    Article III Limits the Power of the Federal Courts to Adjudicate Only in Cases or Controversies**

"Article III of the Constitution limits the federal judicial power to 'Cases' or 'Controversies.'" Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 193 (3d Cir. 2004) (quoting United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 551 (1996)). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines," including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." Toll Bros., Inc. v. Twp. of Redington, 555 F.3d 131, 137 (3d Cir. 2009) (citations omitted). The standing and ripeness doctrines are related, as "[e]ach is a component of the Constitution's limitation of the judicial power to real cases and controversies." Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994). Ripeness determines when a proper party may bring an action and standing determines who may bring the action. Id. (quoting Smith v. Wis. Dep't of Agric., Trade & Consumer Prot., 23 F.3d 1134, 1141 (7th Cir. 1994)); see also, Smith, 23 F.3d at 1141 (noting "[i]f no injury has occurred, the plaintiff can be told either that she cannot sue, or that she cannot sue yet").

Standing ensures "plaintiffs have a 'personal stake' or 'interest' in the outcome of the proceedings, 'sufficient to warrant . . . [their] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on . . . [their] behalf.'" Khodara Envtl., Inc., 376 F.3d at 193 (quoting Joint Stock Soc'y v. UDV N. Am., Inc, 266 F.3d 164, 175 (3d Cir. 2001)) (alterations in original). In contrast, "[t]he ripeness doctrine

serves to 'determine whether a party has brought an action prematurely and counsels

abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional

and prudential requirements of the doctrine.'" <u>Khodara Envtl., Inc.</u>, 376 F.3d at 196

(quoting <u>Peachlum v. City of York</u>, 333 F.3d 429, 433 (3d Cir. 2003)).

A court is required to raise issues of standing and ripeness if not raised by the

parties. <u>Addiction Specialists Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 405 (3d Cir. 2005)

(quoting <u>Steele v. Blackman</u>, 236 F.3d 130, 134 n.4 (3d Cir. 2001) (court required to raise

the issue of standing); <u>County Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 163-64

(3d Cir. 2006) (quoting <u>Felmeister v. Office of Attorney Ethics</u>, 856 F.2d 529, 535 (3d

Cir. 1988) (court required to raise the issue of ripeness).[13] In addition, the plaintiff must

allege facts invoking the court's jurisdiction. <u>Presbytery of New Jersey</u>, 40 F.3d at 1462

(citing <u>Renne v Geary</u>, 501 U.S. 312, 316 (1991)).

Plaintiffs lack standing to raise the constitutional issues. In addition, the

controversy is not ripe for federal review. Accordingly, defendants' motions will be

granted, and plaintiffs' complaint will be dismissed.

---

[13] The judicial defendants alleged the claims against them should be dismissed because "[a] suit against a judge who acted in his or her adjudicatory capacity lacks the necessary requirement of justiciable controversy." <u>See</u> Judicial Defendants Memorandum at 3 (citing <u>Bauer v. Texas</u>, 341 F.3d 352, 359 (5th Cir. 2003)). The executive defendants alleged the claims against them should be dismissed because the plaintiffs' claims were foreclosed by <u>Rogers v. Corbett</u>, 468 F.3d 188 (3d Cir. 2006), Executive Defendants' Memorandum at 9-10, the assessment of fees does not violate the First and Fourteenth Amendments, <u>id.</u> at 11-16, and the executive defendants are not proper parties because the do not initiate, or participate in, the hearings, <u>id.</u> at 17-20.

### A.      Standing to Seek Injunctive Relief

Standing ensures "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." <u>Summers v. Earth Island Inst.</u>, 129 S.Ct. 1142, 1149 (U.S. 2009) (quoting <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 221 (1974)).   To establish standing under Article III of the Constitution, a plaintiff seeking injunctive relief must demonstrate the following three elements: (1) he "suffered a 'concrete,' 'particularized' injury-in-fact, which must be 'actual or imminent, not conjectural or hypothetical;'" (2) the  injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "a favorable decision likely would redress the injury." <u>Toll Bros. Inc.</u>, 555 F.3d at 137-38 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992))

### 1)      Injury-in-Fact

To establish an injury-in-fact the plaintiff "must suffer a palpable and distinct harm," <u>Toll Bros. Inc.</u>, 555 F.3d at 138, and the harm "must affect the plaintiff in a personal and individual way," <u>id.</u> (citing <u>Lujan</u>, 504 U.S. at 560 n. 1).

Plaintiffs fail to allege a threat of injury that is actual and imminent.  Plaintiffs allege potential candidates' right to ballot access is chilled because of the possibility of assessed costs.  This threat, however, is "conjectural or hypothetical," not "actual and

10

imminent." Plaintiffs allege non-major party candidates have been assessed costs in the past. This prior assessment, however, does not establish the plaintiff parties' future candidates will be assessed costs. Moreover, the Pennsylvania courts, in the two cases assessing sanctions against non-major party candidates, found the candidates had participated in fraud, bad faith, or similar inappropriate conduct prior to assessing costs. Nader, 905 A.2d at 455; Rogers, 942 A.2d 915, 930-31 (Pa. Super. Ct. 2008). Plaintiffs make no allegation a court will access costs against a candidate who acts in good faith.[14] See Pa. Prison Soc'y v. Cortes, 508 F.3d 156, 167 (3d Cir. 2007) (plaintiff failed to establish injury-in-fact where he did not establish a sufficient likelihood he would be personally injured by the amendments).

2)   Traceability

To establish traceability "[t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." Toll Bros., Inc., 555 F.3d at 142 (citing Lujan, 504 U.S. at 560). Unlike the injury-in-fact prong, which "focuses on whether the plaintiff suffered harm, . . . the traceability prong focuses on who inflicted that harm." Id. (emphasis deleted). An indirect causal

---

[14]   Plaintiffs claim the Commonwealth Court cited Romanelli's failure to ensure nine people were present on his behalf for every day of the proceedings and his "disingenuousness" as justification for the sanction. Amended Complaint at ¶ 36. The court opinion, however, found the candidate failed to comply with court orders, and his "cumulative disingenuousness in these proceedings ha[d] crossed the line into bad faith." In re Nomination Papers of Rogers, 914 A.2d 457, 468-69 (Pa. Commw. Ct. 2006).

relationship will suffice if "there is 'a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.'"  Id. (quoting Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)).

Even if plaintiffs had alleged a sufficient injury-in-fact, they have failed to show the injury can be traced to an action of the defendants.  Neither the judicial nor executive defendants can initiate a suit challenging a candidate's nomination paper.  See 25 Pa. Cons. Stat. Ann. §2937.  Only private individuals may challenge a non-major  party candidate's nomination paper.  If the paper is dismissed, a state court could require the candidate to pay costs "as [the court] shall deem just."  25 Pa. Cons. Stat. Ann. § 2937; Nader, 905 A.2d at 458.  Plaintiffs have not alleged the defendants have the power to challenge a nomination paper and have not alleged sufficient facts to establish defendants have threatened, or could threaten, plaintiffs with an assessment of costs absent a challenge to a nomination paper.  See Amended Complaint.

Moreover, neither the judicial nor executive defendants have the power to change the law.  The Justices and Judges adjudicate claims brought by private parties who challenge the nomination paper under the statute, and Mr. Johns and Mr. Krimmel merely process the court's orders.  The Executive Defendants simply administer the process created by statute.

3)     Redressability

Redressability "is 'closely related' to traceability, and the two prongs often overlap." Toll Bros., Inc., 555 F.3d at 142 (quoting Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminal, Inc., 913 F.2d 64, 73 (3d Cir. 1990)). "[T]raceability looks backward (did the defendants cause the harm?), redressability looks forward (will a favorable decision alleviate the harm?)." Id. The redressability prong "requires a showing that 'the injury will be redressed by a favorable decision.'" Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000)). Redressability does not "demand . . . mathematical certainty. It is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" Id. (quoting Vt. Agency of Natural Res., 529 U.S. at, 771).

A decision would not redress any harm and would not result in "specific relief" to anyone. Plaintiffs maintain an order from this court would prevent the courts from continuing to unconstitutionally assess costs. As the case is presented, however, any opinion issued would be an advisory opinion, which would not redress any harm. See N.J. Peace Action v. Obama, 2009 WL 1416041, at *5 (opinion would be "an advisory opinion not sufficient to redress any of Plaintiffs' claimed injuries).

Courts are "without power to give advisory opinions." Rhone-Poulenc-Surfactants and Specialties, L.P. v. C.I.R., 249 F.3d 175, 182 (3d Cir. 2001) (quoting Alabama State Fed'n of Labor v. McAdory, 325 U.S. 450, 461 (1945)). It is the court's "considered

practice not to decide abstract, hypothetical or contingent questions." Id. (quoting

Alabama State Fed'n of Labor, 325 U.S. at 461. Any opinion addressing plaintiffs claims

would be advisory. It would be based on a hypothetical set of facts, without sufficient

information to support findings. See PSA, LLC v. Gonzales, 271 Fed. Appx. 218, 220

(3d Cir. 2008) (actions cannot result in an "opinion advising what the law would be on a

hypothetical set of facts" (quoting Step-Saver Data Sys., Inc., 912 F.2d at 649). The court

would have to assume a nomination paper would be challenged, the nomination paper

would be held invalid, the challenger would seek costs, and the costs would be assessed.

Therefore, plaintiffs lack standing to request injunctive relief.


### B.    Standing to Seek Declaratory Relief

"A plaintiff seeking a declaratory judgment must possess constitutional standing

but need not have suffered 'the full harm expected.'" Khodara Envtl., Inc., 376 F.3d at

193 (quoting The St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d

232, 240 (3d Cir. 2000)). A plaintiff seeking a declaratory judgment "has Article III

standing if 'there is substantial controversy, between parties having adverse legal

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.'" Id. (quoting The St. Thomas-St. John Hotel & Tourism Ass'n, 218 F.3d at

240).

Plaintiffs fail to establish the parties have adverse interests or a substantial

controversy of sufficient immediacy and reality to warrant declaratory relief.  Neither the

judicial nor executive defendants can initiate a suit challenging a non-major party

petition, see 25 Pa. Cons. Stat. Ann. §2937, and neither can change the law.   In addition,

plaintiffs fail to establish a sufficient danger costs will be unconstitutionally assessed

against a non-major party candidate.  See supra Part III.A.

Accordingly, plaintiffs lack standing to seek declaratory relief.


### C.      Ripeness of the Injunctive Relief Request

"Various considerations 'underpin the ripeness doctrine,' including whether the

parties are in a 'sufficiently adversarial posture to be able to present their positions

vigorously,' whether the facts of the case are 'sufficiently developed to provide the court

with enough information on which to decide the matter conclusively,' and whether a party

is 'genuinely aggrieved so as to avoid expenditure of judicial resources on matters which

have caused harm to no one.'"  Khodara Envtl., Inc., 376 F.3d at 196 (quoting Peachlum,

333 F.3d at 433-34).  To determine whether a case is ripe, courts examine: "(1) 'the

fitness of the issues for judicial decision,' and (2) 'the hardship to the parties of

withholding court consideration.'"  Id. (quoting Peachlum, 333 F.3d at 433-34).  "The

principle consideration is whether the record is factually adequate to enable the court to

make the necessary legal determinations.  The more that the question presented is purely

one of law, and the less that additional facts will aid the court in its inquiry, the more

likely the issue is to be ripe." Artway v. Attorney Gen. of State of N.J., 81 F.3d 1235, 1249 (3d Cir. 1996).


      1)    Fitness

"The fitness question . . . requires an assessment of whether the issues presented are 'purely legal,' whether the agency action is final . . . , and whether 'further factual development would 'significantly advance our ability to deal with the legal issues presented.''" Univ. of Med. and Dentistry of N.J. v. Corrigan, 347 F.3d 57, 68 (3d Cir. 2003) (quoting Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 812 (2003)).

Simply stated, there is no case here. No factual development has occurred and no concrete factual dispute exists. There is no pending dispute and no challenge to a nomination paper. Any opinion would be advisory, based on hypothetical facts and speculation. See Rhone-Poulenc-Surfactants and Specialties, L.P., 249 F.3d at 182. Without factual development, I am unable to address the legal issues presented. See Nat'l Park Hospitality Ass'n, 538 U.S. at 812 (noting, although the question presented was purely legal, and constituted "final agency action," "further factual development would 'significantly advance [the court's] ability to deal with the legal issues presented'").

2)    <u>Hardship</u>

"The second prong of the ripeness inquiry is whether deferral of judicial review will create an immediate and significant hardship for the parties and, if so, whether this hardship outweighs the unfitness for review." <u>Turnage v. U.S. Parol Comm'n</u>, 157 Fed. Appx. 507, 508 (3d Cir. 2005) (citing <u>Felmeister</u>, 856 F.2d at 537-38).

Withholding judgment will not present a hardship. If a private party challenges the nomination paper of a non-major party candidate and requests costs, the candidate can challenge the constitutionality of such costs in state court. Plaintiffs' argument that future candidates' rights are chilled ignores that the prior assessments included a finding of bad faith. Plaintiffs fail to establish a candidate who acts in good faith will be assessed costs. <u>See</u> <u>supra</u> Part III.A.1. Their allegation candidates have not submitted nomination papers because they fear an assessment of costs is not sufficient to establish hardship.

The "controversy," therefore, is not ripe for federal review.

**D.    Ripeness for the Declaratory Relief Request**

Because declaratory judgments are usually sought before "a completed injury has occurred," courts apply a "somewhat 'refined' test" to determine ripeness. <u>Khodara Envtl., Inc.</u>, 376 F.3d at 196 (quoting <u>Pic-A-State Pa. Inc. v. Reno</u>, 76 F.3d 1294, 1298 (3d Cir. 1996)). "Thus, when 'determining whether to engage in pre-enforcement review of a statute in a declaratory judgment action,' [courts] look to '(1) the adversity of the

parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment.'" Id. (quoting Pic-A-State Pa., Inc., 76 F.3d at 1298).

1)    Adversity

For adversity to exist "the defendant must be so situated that the parties have adverse legal interests." Presbytery of New Jersey, 40 F.3d at 1463 (quoting Step-Saver Data Sys., Inc., 912 F.2d at 648). "[T]here must be a substantial threat of real harm and . . . the threat 'must remain real and immediate throughout the course of the litigation.'" Id. (quoting Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192 (3d Cir.1990)).

Plaintiffs have not established adversity. As discussed above, plaintiffs fail to establish the parties have adverse interests. See supra Part III.A.2. Neither the judicial nor executive defendants can initiate a suit challenging a candidate's nomination paper, see 25 Pa. Cons. Stat. Ann. §2937, and the judicial and executive defendants do not have the power to change the law.

In addition, plaintiffs fail to establish there is a "substantial threat of real harm." See supra Part III.A.1. Although prior candidates who acted in bad faith were assessed costs, plaintiffs have not established the plaintiff parties' future candidates will be assessed costs, especially if the candidates act in good faith.

2)     Conclusiveness

"Conclusiveness is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights." PSA, LLC, 271 Fed. Appx. at 220 (quoting NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 344 (3d Cir. 2001)). "All actions must be 'based on a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts.'" Id. (quoting Step-Saver, 912 F.2d at 649).

Several events must occur before any of the plaintiffs' rights are affected. A non-major party candidate would have to attain the necessary signatures on a nomination paper. Then, someone (notably, none of the defendants) would have to file a challenge to the nomination paper. Finally, a successful challenge would need to cause the Pennsylvania courts to charge the candidate fees and costs. Along the way, the Pennsylvania court would have to rule that the candidate corrupted the process by submitting bogus signatures. None of this has happened. None of this will happen imminently. The parties really have no context for their assertion of rights.

Any opinion issued would be an advisory opinion, at best. See Part III.A.3; Rhone-Poulenc-Surfactants and Specialties, L.P., 249 F.3d at 182 (courts are "without power to give" advisory opinions) (quoting Alabama State Federation of Labor, 325 U.S. at 461)). There is no present controversy, no pending challenge to a nomination paper,

19

and the opinion would not provide specific relief to anyone.  Therefore, plaintiffs fail to

establish conclusiveness.


       3)     <u>Practical Utility</u>

"Practical utility goes to 'whether the parties' plans of actions are likely to be

affected by a declaratory judgment,'" <u>NE Hub Partners, L.P.</u>, 239 F.3d at 344 (quoting

<u>Step-Saver</u>, 912 F.2d at 649 n. 9), and considers the hardship to the parties of withholding

judgment, <u>id.</u> at 344-45.  A declaratory judgment "must be of some practical help to the

parties. The Declaratory Judgments Act was enacted to clarify legal relationships so that

plaintiffs (and possibly defendants) could make responsible decisions about the future."

<u>Id.</u> (quoting <u>Travelers Ins. Co. v. Obusek</u>, 72 F.3d 1148, 1155 (3d Cir. 1995)).

Plaintiffs fail to establish the practical utility factor.  Withholding judgment will

not present a hardship.  <u>See</u> <u>supra</u> Part III.C.2.  Any opinion issued would be no more

than a general discussion of whether the provisions are constitutional and it would be of

little help to Pennsylvania courts or executives attempting to comply with an order I

might issue.  That any such opinion would not be grounded in facts arising from a dispute

between parties renders the "practical utility" even more remote.

Accordingly, the controversy is not ripe for declaratory relief.

**IV.    The State Court Opinions**

Although the plaintiffs argue they are not challenging the state court decisions in

Nader and Rogers, it is difficult to distinguish between the current case and a challenge to

the Nader and Rogers opinions, which allowed an assessment of costs against non-major

party candidates.  Nader and Rogers addressed the constitutionality of § 2937 based on

costs assessed against prior candidates.  See Nader, 905 A.2d at 465; Rogers, 942 A.2d at

929.  Plaintiffs request I find § 2937 unconstitutional, arguing the statute, and the court's

prior assessment of costs, chills non-major party candidates' First Amendment rights.

Although the courts in Nader and Rogers did not specifically address whether the statute

would chill participation, they did find the provision allowing the assessment of costs

constitutional.  See Nader, 905 A.2d at 459; Rogers, 942 A.2d at 929.  The current case is,

in essence, an improper challenge to these state court determinations.  See Guarino v.

Larsen, 11 F.3d 1151, 1156-57 (3d Cir. 1993) (federal courts should presume complete

state court proceedings correctly resolved federal issues presented); see also District of

Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (federal district court

is without authority to review final determinations of state courts).

If a private party challenges the nomination paper of a non-major party candidate

and requests costs, the candidate can challenge the constitutionality of such costs in state

courts.  This would provide the state court with a specific set of facts to address the

constitutional issues.  In addition, it would provide the state court an opportunity to

interpret the state statute, and such interpretation may alter the question presented.  See

Renne v. Geary, 501 U.S 312, 323 (1991) (quoting Babbitt v. Farm Workers, 442 U.S.

289, 306 (1979)) (noting granting the state court an opportunity to interpret a state statute

can "materially alter the question to be decided.").[15]

      For the reasons discussed above, I will dismiss plaintiff's complaint for failure to

present a case or controversy, as required by Article III of the Constitution.

      An appropriate order follows.

---

[15]  Plaintiffs allege the statute is unconstitutional, in part, because there are no standards
to determine when costs will be assessed.  Allowing a state court to address whether the
provision violates due process, or is otherwise unconstitutional, will provide the state court an
opportunity to create standards.